

FILED & ENTERED

FEB 24 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Micr Toner International LLC (Nevada),<br>Alleged Debtor. | Case No.:   2:16-bk-24024-ER<br><br>Chapter:    7<br><br>**MEMORANDUM OF DECISION DENYING ALLEGED DEBTOR'S MOTION FOR A JUDGMENT AGAINST PETITIONING CREDITORS**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

    Before the Court is the motion of Micr Toner International, LLC (Nevada) (the "Alleged Debtor") for a judgment for costs, attorneys' fees, compensatory damages, and punitive damages against petitioning creditors Alan Fuller and Sarena Fuller (collectively, "Petitioning Creditors"). Alleged Debtor requests that Petitioning Creditors' counsel be held jointly and severally liable for any judgment for attorneys' fees and costs entered against Petitioning Creditors, as a Bankruptcy Rule 9011 sanction for filing the involuntary petition for an improper purpose.[1] For the reasons set forth below, the Court declines to enter judgment against the Petitioning Creditors or the Petitioning Creditors' counsel.[2]

---

[1] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

[2] The Court reviewed the following papers in adjudicating this matter:

## I. Facts

On October 24, 2016, Petitioning Creditors commenced this involuntary Chapter 7 petition against the Alleged Debtor. According to the records of the Nevada Secretary of State, the Alleged Debtor is a dissolved entity, and its managing members were Alan Fuller and Jennifer Fuller. *See* Jennifer Joss Fuller Decl. at Ex. 1 [Doc. No. 9]. Alan Fuller asserts that the Alleged Debtor owes him $87,327.36 in salary and unpaid dividends; Sarena Fuller asserts that the Alleged Debtor owes her $76,796.41 in salary and unpaid dividends. *See* Involuntary Petition at ¶13 [Doc. No. 1]. According to the Involuntary Petition, the Alleged Debtor has used the following names during the last eight years:
1) Micr Toner International, LLC (CA)
2) Micr Toner Int'l MTI, Inc. (CA)
3) Micr Toner International, Inc. (CA)
4) Micr Toner International (CA unincorporated)

Involuntary Petition at ¶3.

Petitioning Creditors Alan and Sarena Fuller are the children of Jennifer Joss Fuller. *See* Jennifer Joss Fuller Decl. at ¶2 [Doc. No. 9]. Over the past several years, Jennifer, Alan, and Sarena have been involved in a family dispute over the control and ownership of the Alleged Debtor.[3] *Id.* Jennifer, Alan, and Sarena last worked together in 2014. *Id.* at ¶3. In January 2015, Jennifer formed Micr Toner Int'l MTI, Inc. (CA) ("MTI"). *Id.* In August 2016, Alan presented to Jennifer a Binding Letter of Intent ("Letter of Intent") pertaining to MTI. The Letter of Intent provided that Jennifer would completely release Alan and Sarena, as well as Renewable Toner, LLC, a company owned by Alan and Sarena, from any causes of action which Jennifer may have against them. Jennifer refused to sign the Letter of Intent. *Id.* at ¶4.

On January 25, 2017, the Court found that it lacked jurisdiction to enter an order for relief against the Alleged Debtor, and granted the Alleged Debtor's motion to dismiss the involuntary petition. In reaching this conclusion, the Court rejected the Petitioning Creditors' argument that

---

1) Alleged Debtor's Statement of: (A) Costs and Attorney's Fees Incurred in Responding to the Involuntary Petition; (B) Damages Proximately Caused by the Filing of the Involuntary Petition; (C) Basis for Award of Punitive Damages and Amount of Award ("Alleged Debtor's Statement of Fees") [Doc. No. 31];
   a) Declaration of Jennifer Joss Fuller [Doc. No. 32];
   b) Declaration of John Cleveland [Doc. No. 33];
   c) Declaration of Regla Vera [Doc. No. 34];
   d) Declaration of Raymond Hovsepian Re: Expected Losses from Lease Termination [Doc. No. 35];
   e) Declaration of Glenn Ward Calsada [Doc. No. 36];
2) Opposition to Alleged Debtor's Statement of: (A) Costs and Attorney's Fees Incurred in Responding to the Involuntary Petition; (B) Damages Proximately Caused by the Filing of the Involuntary Petition; (C) Basis for Award of Punitive Damages and Amount of Award [Doc. No. 39];
   a) Evidentiary Objection to (1) the Declaration of Jennifer Joss Fuller; (2) the Declaration of John Cleveland and Exhibits Thereto; (3) the Declaration of Raymond Hovsepian; and (4) the Declaration of Regla Vera [Doc. No. 40].

[3] Given names are used to distinguish family members. No disrespect is intended.

the Court could not consider, in the context of a motion to dismiss, extrinsic evidence submitted by the Alleged Debtor. The Court explained:

> "In resolving a factual attack on jurisdiction, the … court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. 'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citations omitted).
>
> The Motion to Dismiss clearly alerted the Petitioning Creditors that Movant was factually attacking the Court's jurisdiction. The Motion cited authorities explaining that extrinsic materials could be considered in connection with a jurisdictional attack,[4] and the Motion included extrinsic evidence—a declaration from Jennifer Fuller, a managing member of the Alleged Debtor, and online documents from the Nevada Secretary of State relating to the Alleged Debtor's status. Having been clearly apprised of the Movant's factual attack upon the Court's jurisdiction, the burden shifted to Petitioning Creditors to "furnish affidavits or other evidence" necessary to establish jurisdiction. *Meyer*, 373 F.3d at 1039. Accordingly, there is no merit to Petitioning Creditors' argument that issues of fact—such as whether the Petitioning Creditors are insiders of the Alleged Debtor, or whether the Alleged Debtor has been dissolved—cannot be determined until trial upon the involuntary petition. Further, postponing such factual determinations to trial would be inconsistent with the Court's obligation to "determine the issues of a contested petition at the *earliest practicable time* and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order." Bankruptcy Rule 1013(a) (emphasis added).

Final Ruling Dismissing Involuntary Petition [Doc. No. 29] at 5–6.

The Court found that an involuntary petition could not be commenced against the Alleged Debtor because the Alleged Debtor was dissolved on June 13, 2013, and the statute of limitations for commencing actions against the Alleged Debtor had expired:

> An involuntary petition may be commenced against a dissolved corporation only if applicable state law provides that the dissolved corporation remains in existence for the purpose of winding up its affairs. *See, e.g.*, *In re Ethanol Pac., Inc.*, 166 B.R. 928, 930 (Bankr. D. Idaho 1994) ("The eligibility of a dissolved corporation for relief under the Bankruptcy Code depends on the continuing existence of the corporation after the dissolution under the applicable local law."); *In re Anderson*, 94 B.R. 153, 156–57 (Bankr. W.D. Mo. 1988) ("Persons who may be debtors under Chapter 7 and the subject of an involuntary bankruptcy proceeding include dissolved corporations. Courts have uniformly held, however, that a voluntary or involuntary Chapter 7 petition may only be filed against a dissolved corporation that is still in existence.").
>
> The Alleged Debtor was a Nevada company. Nevada law provides that the statute of limitations for commencing actions against a dissolved company is three years. *See* NRS

---

[4] *See* Motion at 6 ("When a defendant makes a factual challenge 'by presenting affidavits or other evidence brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.' *Meyer*, 375 F.3d at 1039; *Savage*, 343 F.3d at 1029 n.2.").

> §86.505 ("The dissolution of a limited-liability company does not impair any remedy or cause of action available to it or against it … commenced … within 3 years after the date of dissolution. Any such remedy or cause of action not commenced within the applicable period is barred.")….
>
> The Court finds that the Alleged Debtor was dissolved on June 13, 2013. This finding is based upon the online records from the Nevada Secretary of State submitted by the Movant. Pursuant to NRS §86.505, the statute of limitations for commencing any action against the Alleged Debtor expired on June 6, 2016. Having been commenced on October 24, 2016, the instant involuntary petition is time-barred. As a result, the Court lacks jurisdiction to enter an order for relief.
>
> Because Movant submitted evidence showing that the Alleged Debtor dissolved on June 13, 2013, the burden is upon the Petitioning Creditors to show that the Alleged Debtor was not dissolved upon that date. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (internal citations omitted) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.").[5]
>
> Petitioning Creditors have not carried their burden. In support of their contention that the Alleged Debtor has not been dissolved, Petitioning Creditors present hypothetical reasons as to why the Certificate of Dissolution might not have been effective. Such speculation is not evidence and does nothing to further Petitioning Creditors' position.

*Id.* at 7–8.

The Court found that, in addition to lacking jurisdiction because actions against the Alleged Debtor were time-barred, it also lacked jurisdiction because the Petitioning Creditors were insiders who were not eligible to commence an involuntary petition. The Court found that the Petitioning Creditors qualified as insiders since they were either managing members of the Alleged Debtor, or were related to a managing member of the Alleged Debtor. In making this finding, the Court acknowledged a split of authority as to whether insiders were precluded from commencing an involuntary petition. Observing that there was no controlling authority on the issue in the Ninth Circuit, the Court elected to follow *In re Little Bldgs., Inc.*, 49 B.R. 889, 890–91 (Bankr. N.D. Ohio 1985), which holds that insiders may not commence an involuntary petition.

The Court required the parties to submit further briefing regarding whether the Alleged Debtor was entitled to a judgment against the Petitioning Creditors under §303(i).

**Alleged Debtor's Motion for a Judgment Under §303(i) and the Petitioning Creditors' Opposition Thereto**

The Alleged Debtor seeks a judgment for costs, attorneys' fees, compensatory damages, and punitive damages against the Petitioning Creditors, on the grounds that the involuntary petition was filed in bad faith. The Alleged Debtor asserts that the separate corporate entities that the Petitioning Creditors listed as trade names of the Alleged Debtor have standing to seek a

---

[5] As discussed previously, there is no merit to Petitioning Creditors' argument that issues of fact may not be determined in the context of this Motion.

judgment.[6] According to the Alleged Debtor: "A bankruptcy estate includes the debtor's intangible property interests as defined by nonbankruptcy law (e.g., trade names or corporate names).... Accordingly, all entities named in the involuntary petition have personal standing for a judgment under 11 U.S.C. §303(i)." Alleged Debtor's Statement of Fees at 2.

In support of the contention that the involuntary petition was filed in bad faith, the Alleged Debtor makes the following assertions:

1) Before filing the involuntary petition, Petitioning Creditors Alan and Sarena presented a Letter of Intent to Jennifer, one of the Alleged Debtor's managing members. The Letter of Intent provided that Jennifer would completely release Alan and Sarena, as well as Alan and Sarena's company Renewable Toner, LLC, from any causes of action which Jennifer may have against them. Nowhere in the Letter of Intent did Petitioning Creditors contend that they were owed money by the Alleged Debtor. When Jennifer refused to sign the Letter of Intent, Alan and Sarena filed the involuntary petition for the sole purpose of coercing Jennifer to sign the Letter of Intent.[7] Petitioning Creditors did not make a written demand for payment of salary or dividends upon the Alleged Debtor prior to filing the involuntary petition. Jennifer Joss Fuller Decl. [Doc. No. 32] at ¶7.

2) The involuntary petition contained a number of materially false statements. For example, despite the fact that the Alleged Debtor had been dissolved in 2013, the involuntary petition states that the Alleged Debtor had a principal place of business in this district, continued to use various trade names, and was eligible to be a debtor in bankruptcy. The involuntary petition states that the Petitioning Creditors were eligible to file the petition, when the Petitioning Creditors were insiders who were not eligible to file the petition. The involuntary petition states that the debts were not subject to bona fide dispute, even though the debts were time-barred and therefore subject to bona fide dispute. The involuntary petition lists, as the Alleged Debtor's website, the address of a website that is in fact owned by MTI. The Petitioning Creditors added this website to destroy MTI's internet business.

3) Petitioning Creditors listed MTI as a trade name of the Alleged Debtor, even though (a) Petitioning Creditors never worked for or had any interest in MTI and (b) MTI was not

---

[6] The involuntary petition was filed against Micr Toner International, LLC (Nevada). Question 3 of the involuntary petition form requires the Petitioning Creditors to list "Other names you know the debtor has used in the last 8 years," including "any assumed names, trade names, or *doing business as* names." Petitioning Creditors listed the following corporate entities in response to Question 3:
1) Micr Toner International, LLC (CA)
2) Micr Toner Int'l MTI, Inc. (CA)
3) Micr Toner International, Inc. (CA)
4) Micr Toner International (CA unincorporated).

[7] Petitioning Creditors object that the Letter of Intent is inadmissible as a settlement communication pursuant to Evidence Rule 408. The objection is overruled. Settlement communications are inadmissible only if they are proffered to prove or disprove the validity or amount of a disputed claim. Settlement communications may be admitted for other purposes. Evidence Rule 408(b). Here, the Letter of Intent is proffered to prove that Petitioning Creditors filed the involuntary petition for an improper purpose. Petitioning Creditors' additional objection that the Letter of Intent has not been authenticated is overruled.

    formed until eighteen months after the Alleged Debtor was dissolved. The only reason to include MTI on the involuntary petition was to harm its business.

The Alleged Debtor seeks attorneys' fees and costs in the amount of $35,460.00, compensatory damages in the amount of $282,016.58, and punitive damages in the amount of $846,049.74 (three times the amount of compensatory damages). The Alleged Debtor asserts that as a result of having to hire counsel to contest the involuntary petition, it fell behind on rent payments and will likely lose its current below-market lease. The Alleged Debtor seeks compensatory damages to cover relocation expenses, increased rent, and lost profits. In addition, the Alleged Debtor requests that Petitioning Creditors' counsel be held jointly and severally liable for any judgment for attorneys' fees and costs entered against Petitioning Creditors, as a Bankruptcy Rule 9011 sanction for filing the involuntary petition for an improper purpose.

    Petitioning Creditors deny that the involuntary petition was filed in bad faith, for the following reasons:

1) Petitioning Creditors had reasons to believe that the dissolution of the Alleged Debtor was ineffective, making it appropriate to file the involuntary petition. The declaration of Jennifer Fuller states that the Alleged Debtor was dissolved on June 13, 2013, and that MTI was formed in January 2015. Yet business operations continued during this eighteen month gap. The Alleged Debtor continued using the same bank account, employees, premises, business name, and website after June 13, 2013. The mere fact that the Alleged Debtor filed a Certificate of Dissolution ("Certificate") with the Nevada Secretary of State does not mean establish that the Alleged Debtor was dissolved, given that the Alleged Debtor continued operations after filing the Certificate.

2) The involuntary petition was necessary to resolve issues of Alan Fuller's tax liability. The Alleged Debtor sold merchandise through an Amazon.com account in Jennifer's name. The Alleged Debtor continued using that account subsequent to its dissolution. Without Alan's authorization, Jennifer used Alan's social security number on the Amazon.com. As a result, the Internal Revenue Service contends that Alan is liable for taxes relating to the income of the Alleged Debtor and the Alleged Debtor's successors. The asserted tax liability is $816,925.00 for the year 2014. The involuntary petition was filed to compel the Alleged Debtor to file proper tax returns, so that Alan would no longer be liable to pay taxes on account of the Alleged Debtor's income.

## II. Findings and Conclusions

### A. The Court Cannot Enter Judgment Against the Petitioning Creditors and in Favor of the Alleged Debtor Because the Alleged Debtor was Dissolved on June 13, 2013

    Section 303(i) provides:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
    (1) against the petitioners and in favor of the debtor for—
        (A) costs; or
        (B) a reasonable attorney's fee; or
    (2) against any petitioner that filed the petition in bad faith, for—
        (A) any damages proximately caused by such filing; or
        (B) punitive damages.

Here, the Alleged Debtor, a Nevada limited liability company, was dissolved on June 13, 2013. Nevada law provides that judgment may not be entered in favor of a dissolved limited liability company unless the action seeking such judgment is commenced within three years of the date of dissolution: "The dissolution of a limited liability company does not impair any remedy or cause of action available to … it … commenced … within 3 years after the date of dissolution …. Any such remedy or cause of action not commenced within the applicable period is barred." Nevada Revised Statute ("NRS") §86.505. Although federal law provides for an award of damages to an alleged debtor, state law determines whether an alleged debtor that is a corporate entity still exists for purposes of obtaining a judgment. Under applicable Nevada law, the damages remedy provided for in §303(i) is no longer available to the Alleged Debtor, because the Alleged Debtor did not seek §303(i) damages within three years of its dissolution.

This result is consistent with the Court's reasons for dismissing the involuntary petition. In finding that dismissal was warranted, the Court noted that the "eligibility of a dissolved corporation for relief under the Bankruptcy Code depends on the continuing existence of the corporation after the dissolution under the applicable local law." *In re Ethanol Pac., Inc.*, 166 B.R. 928, 930 (Bankr. D. Idaho 1994). The Court found that under applicable Nevada law, the Alleged Debtor, as a dissolved entity, was not eligible for relief under the Bankruptcy Court. The Court's finding was based on the fact that NRS §86.505 provides for a three-year statute of limitations on commencing actions against dissolved limited liability companies. The same statute requires dissolved limited liability companies to commence an action within three years of dissolution if they wish to obtain a judgment in their favor.[8] Because the limitations period prescribed by NRS §86.505 applies to both actions commenced in favor of and against the Alleged Debtor, the Court's finding that the Alleged Debtor no longer exists for debt collection purposes compels the corollary finding that the Alleged Debtor no longer exists for purposes of obtaining a judgment in its favor.

The Court's holding is also consistent with §303(i)'s purpose of discouraging "inappropriate and frivolous" involuntary petitions that may "chill the alleged debtor's credit and sources of supply and scare away his customers." *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 707 (9th Cir. 2004) (internal citations omitted). Where, as here, the Alleged Debtor has been dissolved, there is no need to protect the Alleged Debtor from inappropriate involuntary petitions.

Apparently recognizing that judgment may not be entered in favor of a dissolved company, the Alleged Debtor argues that judgment may be entered in favor of the entities that the Petitioning Creditors listed as trade names of the Alleged Debtor. The problem with this argument is that the entities listed as trade names are themselves separate legal entities that are distinct from the Alleged Debtor. The Ninth Circuit has held that damages under §303(i) may be awarded only to the alleged debtor, notwithstanding the fact that related people or entities may also be harmed by the filing of an involuntary petition:

> When Congress enacted the comprehensive Bankruptcy Reform Act of 1978 after a decade-long debate, it could not have gone unrecognized that debtors' immediate family members might also suffer the same types of harm or emotional distress as their family members who are subject to involuntary bankruptcy proceedings. Yet Congress determined that bankruptcy courts could award damages predicated on the bad faith filing

---

[8] The statute applies to "any remedy or cause of action" available to the Alleged Debtor. This broad language encompasses all remedies, including the remedies available under §303(i).

of involuntary petitions only to the debtors themselves—those participants in involuntary bankruptcy proceedings who suffer most directly the harm from frivolous or spiteful filings. The relevant Senate and House Reports state:

> [I]f a petitioning creditor filed the petition in bad faith, the court may award *the debtor* any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on.

*Miles v. Okun (In re Miles)*, 430 F.3d 1083, 1091 (9th Cir. 2005).

When the Petitioning Creditors filed the involuntary petition, an involuntary case was commenced only with respect to the Alleged Debtor. An involuntary case was not commenced with respect to the separate limited liability companies that the Petitioning Creditors listed as trade names of the Alleged Debtor. To commence involuntary cases against the trade-name entities, the Petitioning Creditors would had to have filed separate involuntary petitions against each trade-name entity. This follows from the plain language of §303(a), which provides that an involuntary case is commenced against a single person, not against multiple persons. *See also* §101(41) (defining "person" as, *inter alia*, an "individual, partnership, and corporation"—again, all in the singular). The mere listing of the trade-name entities on Item 3 of the involuntary petition—which asks for a list of names the Alleged Debtor has used in the past eight years—did not effectuate the commencement of an involuntary case against those separate entities.

This issue was addressed in *In re Goodman*, No. 14-62333, 2014 WL 6390860, at *1 (Bankr. N.D. Ohio Nov. 14, 2014). In *Goodman*, an individual debtor filed a voluntary petition and listed several corporations as other names he had used within eight years before the filing of the petition. Recognizing that the listing of other corporations as names which the debtor had used did not bring those corporations into bankruptcy, the court ordered that the names of the corporations be removed from the petition. The court explained:

> An individual debtor's identity rarely will extend to include separate legal entities, such as limited liability companies and corporations. *In re O'Brien,* 2011 WL 6754095, * 2 (Bankr.D.Conn.2011) ("a limited liability company, although wholly owned by a debtor, remains a separate legal entity.") When a debtor includes separate legal entities as other names, there is a potential for a creditor to misconstrue the identity of the debtor. '[A]ccuracy of the caption is of substantive importance in bankruptcy cases. It is the caption which informs creditors of exactly who has commenced a bankruptcy case so that the creditor has an opportunity to determine whether they have a claim against the debtor's estate.' …
>
> Take, for example, a creditor who loaned a limited liability company money and obtained a personal guaranty from the principal, who has now filed bankruptcy. If the limited liability company's name is included, and the creditor receives the notice with the limited liability company listed as another name of debtor, the creditor may not understand the breadth of the automatic stay and may unnecessarily stay collection actions against the limited liability company as well as the individual debtor.

*In re Goodman*, No. 14-62333, 2014 WL 6390860, at *2 (Bankr. N.D. Ohio Nov. 14, 2014).

The Court can enter judgment under §303(i) only in favor of an alleged debtor. The trade-name entities listed on the involuntary petition were not alleged debtors. Therefore, the Court cannot enter judgment in favor of any of the trade-name entities. This is true notwithstanding the fact that the trade-name entities may have been harmed by the filing of the involuntary petition. As the Ninth Circuit held in *Miles*, §303(i) permits judgment to be awarded only to the alleged

debtor, even though entities associated with the alleged debtor "might also suffer the same types of harm" as the alleged debtor. *Miles*, 430 F.3d at 1091.

### B. Bankruptcy Rule 9011 Sanctions Are Not Warranted

The Court declines to award Bankruptcy Rule 9011 sanctions against Petitioning Creditors' counsel. First, the Alleged Debtor's request for sanctions was not procedurally proper. Alleged Debtor did not seek sanctions through a separate motion, as required by Bankruptcy Rule 9011(c)(1)(A). Even if the Court were to overlook this procedural irregularity, sanctions are not warranted.

The Court dismissed the involuntary petition based on a finding that a debt-collection action against the Alleged Debtor was time-barred in view of the Alleged Debtor's dissolution. However, Petitioning Creditors had non-frivolous reasons to believe that the Certificate of Dissolution filed by the Alleged Debtor was not effective. These reasons included the Alleged Debtor's continued use of the same bank account, employees, premises, business name, and website after the filing of the Certificate of Dissolution, combined with the fact that the Alleged Debtor's principal did not incorporate a new business entity until eighteen months after filing the Certificate of Dissolution. While Petitioning Creditors did not prevail, the positions they took were not frivolous or unwarranted.

Nor was the involuntary petition filed for an improper purpose. The Petitioning Creditors filed the involuntary petition to compel the Alleged Debtor, and/or successor entities which the Petitioning Creditors contended were essentially the alter egos of the Alleged Debtor, to file amended tax returns. The objective was to resolve Alan Fuller's serious tax problems. The Petitioning Creditors also filed the petition in an attempt to collect debts which they maintain were owed to them by the Alleged Debtor. These are legitimate reasons for commencing an involuntary petition.

### C. Conclusion

The Court cannot enter judgment under §303(i) in favor of the Alleged Debtor because the Alleged Debtor is a dissolved limited liability company, and the limitations period governing the Alleged Debtor's ability to obtain a judgment has expired. The Court cannot enter judgment in favor of any of the trade-name entities, which are not alleged debtors, because judgment under §303(i) may be entered only in favor of an alleged debtor. For these reasons, the Alleged Debtor's motion for a judgment for attorneys' fees, costs, damages, and punitive damages against the Petitioning Creditors is DENIED. The Alleged Debtor's request for sanctions against the Petitioning Creditors' counsel is DENIED. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: February 24, 2017

Ernest M. Robles
United States Bankruptcy Judge